Second case of the day, which is Acrylicon v. Silikal, 21-12-853. We've got Mr. Emery here for the Appellant, Mr. Crockett here for the Appellee. Mr. Emery, whenever you're ready. Good morning, and may it please the Court. My name is Mark Emery, here on behalf of Appellant and Cross Appellee, Silikal GmbH. Your Honors, this is the third time that this case has been before this Court, and the reason why we're here this time is because the District Court violated the letter in spirit of the Silikal 2 decision and the Court's limited remand. Silikal 2 reversed or vacated all of the relief that Acrylicon received at trial and after trial, and Silikal 2 remanded only for, quote, a determination of the sum of nominal damages and attorney's fees to which AC USA is entitled. Yet, when the case went down to the District Court, the Court ended up rendering a judgment that included a new of what it originally awarded after a successful trial for AC USA. So let's just talk about the injunction first. Is it your, I know you're sort of arguing in the alternative, but do you think the better argument is that the injunction is precluded by our mandate in Acrylicon 2, or that any argument about the injunction was forfeited? Because I think it's like either one or the other, right? I mean, like, if the argument, you know, as we say in the footnote in Acrylicon 2, this whole deal about the injunction's not properly before us, so we're not going to address it, that sounds like now we're not in mandate rule land anymore. Maybe we're in forfeiture land, but we're not in mandate rule land anymore. I think I see your point, Your Honor, and I think that, I think both arguments, unsurprisingly, are reasons to reverse or vacate the injunction. I would stress that what we have in the Silicol 2 mandate is a very specific observation about the injunction from the Silicol 2 panel, and I would suggest that the reason that that footnote is even there is because there was about a five-minute colloquy about whether the injunction was I mean, I can give you the 22 to 54, minute 22 to 54, to 27 to seconds 48. So I think the rationale for why there's not, was not, and has never been a permanent injunction in this case is all provided there in footnote 25. But the panel in Silicon One called it a permanent injunction, and both sides briefed it as a permanent injunction, so how could it be anything other than oversight that it wasn't in the final judgment? Yeah, I'm glad you raised that. I, having worked a lot of years on this case, I'm still not sure why originally when Acrylicon moved for the relief, they called it a permanent injunction. I'm not sure why the district court accepted it as a permanent injunction or even why Acrylicon One sometimes discussed it as a permanent injunction and sometimes as a preliminary injunction. I would say it goes back and forth, and in fact, if you look at document 515 in the record, which is the district court's order granting attorney's time, Judge Thrash actually called it a preliminary injunction there, and this is after he had entered the final judgment in that case. So there has been, there's been some confusion about that, but again, I think that the way that Silicon Two set this out in footnote 25 is exactly right. It was a preliminary injunction when it was entered. It never became a permanent injunction. But that leads, I think, to Judge Newsom's second point, which is that there is a forfeit here, that when Acrylicon moved for judgment, this is document 418 and 418-1 in the record, they did not ask for an injunction of any sort, and there was none that was entered in the August 2017 final judgment. There could have been ways that Acrylicon could have tried to remedy this. They could have, a Rule 59, a Rule 60, something like that. In any of those instances, it would have been a very different case, and we could have responded to that, right? It may or may not have ended up in the judgment, and then it could have been appealed in Silicon Two, but that's not what happened. Instead, there was a final judgment that did not contain a permanent injunction, and Acrylicon did not cross-appeal. So Silicon Two, the panel was in no position to be able to enlarge its rights by giving it a permanent injunction. So that, I don't think I disagree with any of that statement of the law, but that right would work a forfeiture before this court. Would it necessarily, would the forfeiture necessarily carry over to a remand? That's the difficulty I'm having. I think you're exactly right that we can't grant relief absent a cross-appeal that will enlarge an appellee's rights. So there's clearly a forfeiture before us. But now, the thing is busted, it's sent back to the district court. Does that forfeiture carry over, or now is it sort of blank slate in the district court, and they can ask for whatever sort of relief they now want in the district court? I would say it did carry over to the district court. First, because the combination footnote 25 and the fact that Silicon Two remanded on only two narrow issues, the nominal damages and attorney's fees, shows that the panel did not intend for injunctive relief to be any part of the remand whatsoever. So the issue, I mean, once the cross-appeal was done and once Silicon Two was decided, this issue is dead. I guess I think the reason I asked my first question is it feels like we keep kind of two different issues. So in response to the question I just asked about does the forfeiture carry over from this court to remand, you said yes. And in part in answering that question, you said because look at the scope of what the court said in Acrylicon Two, look at the mandate basically. It remanded only for these limited things. That sounds to me like a mandate rule argument in response to a forfeiture question. And I actually think the two things are different. And to some extent, it cross-purposes with one another because an issue like under the mandate rule, the mandate rule does not extend to issues not properly before the court. And if what footnote 25 means is the issue of this injunction thing, whatever you want to call it, is not properly before the court, then I think it's not a mandate rule issue. Now, it may separately be a forfeiture issue because there was no cross-appeal because you didn't put it before the 11th Circuit. It was forfeited before the 11th Circuit and therefore was likewise forfeited on remand of the district court. I'm not sure if that's how forfeiture law works. And that was sort of the point of my question to you about sort of the carryover effect of any forfeiture. Yes. I mean, I think that forfeiture provides inadequate ground. I would say it could also be described as a jurisdictional ground, right? That what happened when Acrylicon did not cross-appeal in Silicon Two is that that issue could not be decided by the Court of Appeals. And so, it couldn't even remand it down for further relief, right? You see, that's where I'm having my problem. Why couldn't they go back to district court and say, you know, Judge, this case has been screwed up. Whatever the panel said on round one, it necessarily was preliminary in nature. It had to be. And that's what we said in round two. And we said, therefore, it dissolved once there was a permanent final judgment that was entered in the case. And so, even if we say that we can't consider it, why couldn't he go back to the district court and say, you meant to give us a permanent injunction. That's clear as a bell. These procedural infirmities occurred. We want a permanent injunction. We want you to use Rule 65, make specific findings of fact and conclusions of law. It can be litigated, etc. Have they forfeited that right, even if they forfeited the right to argue it here because there was no cross-appeal? Yes, Your Honor, I believe they have. Why? Because they had opportunity after opportunity to try to raise this differently. It's kind of a latches argument. They were a day late and a dollar short. Is that forfeiture? Again, I would say it's a jurisdictional matter, and it's also a matter of the sort of orderly administration of justice. I mean, how many different ways do they need to be accommodated on acquiring an injunction that they had multiple, multiple opportunities? And you may be right, and that might be what the district court would say, but that's different from saying at the outset it was forfeited on the district court level. What more was there to do? I mean, he based the injunction, and he called it permanent, on an admission that there was a breach of contract. And so I'm not sure what more was necessary. He called it permanent. The Silico One panel called it permanent. You called it permanent. And so why is not his answer that I'm just reconciling Silicon One and Silicon Two accurate? Because a permanent injunction has to be entered at a certain point in time. And at the time when the summary judgment was entered, this was, you know, more than a year before trial. So if they had done what would have been the normal course and sought a permanent injunction when moving for judgment, that would have, I think, required the court's new assessment of the injunction factors, for example, things like the balancing of the equities, public interest. And, you know, we don't know what would have been in that record. You know, but the fact is there is no record on those factors of how things existed at the end of trial or at any subsequent date in these cases. And there's a reason for that. I mean, there is a need. And I think that those need to have consequences. You know, and my client has been litigating this case for seven years now. And I think that the preliminary injunction dissolved. They failed to cross appeal when they could have raised the issue and got relief from the Court of Appeals. They didn't. And I think the issue was done then. Okay. Very well. You have five minutes remaining for rebuttal. Mr. Crockett, let's hear from you. May it please the Court, with respect to the injunction argument that has been addressed so far, the fatal flaw with their argument is there's no vested right to a mistake under federal procedure. The court has the right and the discretion to correct a mistake or oversight at any time under Rule 60. That's all that happened here. Did you, back in the district court, did you invoke Rule 60 to correct the mistake that you're describing now? In essence, we phrased it, we phrased it more, we did say it was a mistake. We did, the way we put it was, the district court, we asked them to harmonize what had been held by this court in Acrylicon 1, which is a decision entitled to dignity and respect and precedential value, that there was a valid permanent injunction, together with the decision in Silical 2, that says a permanent injunction needs to be included in the final judgment or it's invalid. So that the district court was essentially being taught, okay, there was a mistake, there was an oversight, you need to correct it. And that's, that's absolutely, uh, there's- Let me ask you a question about that if I can, Mr. Crockett. Yes, Your Honor. I understand you to be saying that what the district court, in essence, did was he preceded under 60A to correct a mistake. Correct, Your Honor. Although he doesn't reference Rule 60 at all. Help me with 60A. The problem that I have with that is that rule generally deals with corrections based on a clerical mistake. Strikes me that what's going on here is a whole lot more than a clerical mistake. This is a very substantive issue to put in a permanent injunction in the case. If you look at Rule 65 of the statute, it requires the court to make very specific findings when it enters a permanent injunction. Has to state the reasons why it was issued. It has to state the terms specifically. And beyond all of that, it has to describe in reasonable detail the acts that were restrained or being restrained or required. Now, I don't doubt that he said enough on round one for the preliminary injunction to meet the requirements of a preliminary injunction. But the preliminary injunction dissolved of its own weight. That's clear as a bell. Judge Shoflat said it in footnote 25 and it seems to me that that's indisputable. So if he wanted to enter a permanent injunction pursuant to Rule 60, I don't think he could have used 60A because that would have caused to correct a clerical error. He might have used B6, any other reason that justifies relief, the kind of catch-all. But nobody's mentioned 60B6. No one's mentioned 65. And all he did in the final iteration was say permanent injunction. He didn't comply with Rule 65. He didn't and the contents and scope of every injunction requires the district court to state the reasons for doing it, state the terms specifically, and denote in detail the specific act or acts restrained. He did none of that. So even if he purportedly acted under Rule 60, he still didn't and assuming there wasn't a forfeiture, it seems to me you still have that problem. How do we get around that? Okay. Well, I believe Rule 68 does apply because the court may correct a mistake arising from an oversight or omission whenever one is found in a judgment. I take the position that this is clearly the failure to have the one sentence that was affirmed in Acrylicon I in the judgment was an oversight. So clearly that was correct. I also say it was Rule 60B6 and I think it's within the court's inherent power to correct. Courts are there for justice, inexpensive determination. Should we have filed a new action and asked for an injunction based on res judicata? That's not correct. We were there in court to correct the mistake and the judge, your Honor was on a case called Matasino Federal Home Loan which involved an order where the district court said I'm dismissing with prejudice by mistake and that was corrected under Rule 68 and this court affirmed saying because that was the original intent. That's the same thing we have here. We have DE 543, the trial court said I'm ratifying all my previous orders. Believe me, it was the last thing in the trial court's mind or anyone's mind including any of the parties that the permanent injunction that had been affirmed by this court had disappeared. We believe we were wrong. I understand Judge Chauvet taught us all that it needed to be in the final judgment but that is an error that should have been corrected. So I think Silicon's self-interest and motivation for its embrace of gotcha jurisprudence does not negate the trial court's discretion to apply reason and justice and harmonize the Acrylicon 1 and 2. Wouldn't that argument be more powerful if the judge said the preliminary injunction was dissolved? The circuit told me that in footnote 25. I'm going to enter a permanent injunction. Preliminary and permanent injunctions overlap but they're not quite the same. I've got to make a series of findings about injury, irreparable injury, weighing the equities, the public interest, etc. and I'm making them and what's more I'm complying with 65D because I'm doing, I'm laying it out in detail. The problem here is he did nothing other than incantate the word permanent injunction. Is that enough? Well let me say your honor that there's not an issue under Rule 65 raised in their briefings but I believe the explanation is Judge Thrash believed that the permanent injunction had already been written, found, and been affirmed by this court. So that's the reason why he did not believe more was needed. And by the way there's been no debate, as Judge Middlebrook said, there's no debate that this was appropriate. It was required by the party's agreement. Breach was clear. It was a permanent worldwide injunction that this court affirmed. So I think the trial court was within its discretion. I want to raise a second issue which is Silicow's motion for fees. Before you get to that though, help me with one other issue. And it's been raised already. Your colleague argues that the matter is forfeited in this court and it was forfeited because no cross appeal was filed with the 11th Circuit. So he says whether you could raise it in district court or not is another question. He says you can't. But he says we don't have the power to entertain what wasn't raised before us by the party in a cross appeal. Therefore it's forfeited. Is that right or is that wrong? It's wrong because the district court has its own in parent authority. What this court can do because of the issues that are briefed has nothing to do with the power of the district court. No, no, I accept that. The question I'm asking you is not whether you could go back to the district court or not and whether forfeiture would obtain at that level or not. My question is, is the matter forfeited in this court thereby denuding us of any power to provide the relief you're seeking from the circuit? I don't believe so, Your Honor. I think as I see it, the district court has the power to correct a mistake. He's done so. There's no forfeiture. A mistake is always a mistake. Someone is to be blamed for it, generally the parties as well as the court. And that's because that power exists to correct it. So I think that they're, I really think it's an easy decision if you look at Rule 60 and Rule 1, the purposes of inexpensive and just determinations. And I think Judge Thrash got it right clearly. So I want to say, if I could, one other point on Silical's fees. And this goes to the issue of who is the prevailing party. Silical, too, cut off at least a year of litigation by saying Acrylicon is the prevailing party, right? And therefore Acrylicon is entitled to its fees. Nonetheless, Silical asked for its fees from the district court and obtained them. We're not disputing the amount, but we say that since we were the prevailing party, there can be no fees awarded to the other party. That's an issue of law. It's an issue of de novo review. This court, right there in the Silical 2 opinion, Acrylicon 2 opinion, found that Acrylicon was the prevailing party. Therefore, there can be no fees to Silical. Period, end of story. And that should simply be vacated as a matter of law. And the third issue that I want to address is the matter of Acrylicon's attorney's fees. And the byword here is discretion. The broad discretion of the district court. And as this court said in the Home Depot case, the level of specificity required by the district courts is proportional to the specificity of the opponent's objections. And what Silical did here was they took a dismissive, all or nothing position. They're not owed any fees. And that's just the court had ability to rely on many facts that supported his exercise of discretion. The issues in the case were intertwined on contract and trade secret issues. Liability and damage theories were tried together. There was a deliberate and dishonest breach of the perspective relief. Even the interim relief makes you the prevailing party under Common Cause versus Georgia. Further, in Acrylicon 2, the court said that we had to go all the way through trial in order to prove the personal jurisdiction that existed. So this was something that was not required by us. It was not something we did to build up fees. This was Silical's had in front of it evidence of the litigation misdeeds of Silical, including sanctions for vexatious litigation, which were imposed, not appealed, and paid. So this was, there are ample facts to support the district court's exercise of discretion with respect to fees. So let me ask you a question about this. Because, I mean, it does seem to me that like the universe had changed a lot by the time the district court is considering the sort of the amended fee request, the amended fee petition. You know, the first go around you had, what, 1.5 million in compensatories on the misappropriation claim as an independent ground on the breach of contract claim. Now, when we're back before the district court, you don't have that. You've got nominal damages only on the breach claim. So, I mean, that's a big difference. And somehow only like $60,000 in change gets knocked off. That just seems very strange to me. And, I mean, I get your point about discretion. But, you know, as I read the district court's order, you know, he says pursuant to one, two, and three, here's my award. And I look at one, the decision of the 11th Circuit. Two, the opinion and order of him, first go around. And three, the supplemental judgment entered by him in 2017. And I don't see really any explanation in any of those documents. Well, as I say, the reason for that is Silical took an all or nothing approach. They did not ask for an evidentiary hearing. They did not go through a claim-by-claim analysis. They did not offer this time was unnecessary. And there are other cases. We cited the Mancini case from the Third Circuit, the Flitten case from the 10th Circuit, where full fees were awarded to plaintiffs who may have only gotten, succeeded on one claim out of 15 or gotten 5% of their damages, where the claims are interrelated. And that applies here. So, we believe the district court was within his discretion. Well, I guess I mean, okay, so first go around, you get what, 1.361, we'll say. And then things change a lot in terms of your level of success, right? Do you agree with that? Yes, Your Honor, I do agree with that. And so then on round two, you get 1.2 million for a delta of 66,000 or something. And that, I don't know, it just seems like that warrants some explanation. Well, as I say, I think if Silical had written the brief that they wrote to this court addressing that, the trial court would have given that explanation. They did not. They said, deny all their fees, we won. That was their argument. It was a very sweeping argument, not fact-based, and the trial court was within its power to deal with it as such. So, unless there are any questions from the court, I'll yield my last 30 seconds. Yes. Okay, very well. Thank you so much. All right, Mr. Emory, you've got five minutes remaining. Counsel, can I ask you at the outset to respond to the last thing that Mr. Crockett had said? He said, while it's true that the district court didn't break down that portion of the fees that otherwise would be attributable to the misappropriation claim, which the circuit rejected, and that portion which would be properly attributable to the breach of contract claim, he didn't have to do that because the argument you made in the trial court was it was all or nothing. Is that right? It's absolutely wrong, Your Honor. The burden on a party seeking fees, as Acrylicon was doing, has the burden to show the amount that they're entitled to, usually through a load star calculation, and also the reasonableness of the fees. And the reasonableness element is the big one that's missing here. I mean, the question was, did you argue any specifics as to the amount of the fee or why it was unreasonable? Or did you just take the position that they couldn't recover anything? We argued specifically about the fee, Your Honor. In fact, this notion that we had an all or nothing approach doesn't portray the record accurately at all. Where in the record would you look? This is a document 563, so this is our response to the fee request. Let me explain briefly what we did here. So we took the position that really, given that all they have at this point is nominal damages and an injunction that we think is improper, no fees were proper. However, what we did here was actually put in evidence. Acrylicon put in no evidence in support of their fee motion. We put in some evidence from the fees, and we offered a way to appropriate this. When fees were initially given after the trial, there were some appropriations. They subtracted amount for Lanham Act, for some state law claims. But for some reason, there was sort of a decision to depart from that and treat the law as if it's different. But it's not different now. They still have the burden to come forward and prove their fees on the remand, and they didn't do it. So what we did was we actually proposed an amount based on their own fee records that they had submitted previously. We submitted an 85% discount calculation, which would have resulted in about $15,000 in fees, and added to that the $53,000 that they were previously awarded for Acrylicon 1. So that would have been an amount of about $68,000 in fees. Let me just be sure that I understand your answer to Judge Middlebrooks. Did you say to the district judge in words or substance, the circuit's ruled, the circuit held that ACUSA is entitled to nominal damages on the contract claim. ACUSA may also recover attorney's fees as a prevailing party, even though the damages were only nominal. And he sends it back to the district court with the mandate to determine the sum of nominal damages and attorney's fees to which ACUSA is entitled. That's what the mandate said. When it went back to the district court, did you say, Judge, you've got to tease out the amount of money spent on misappropriation, because that's gone with the wind, and you can only give them fees bearing on contract success, and they're only insofar as the damages were nominal. And therefore, the number has to be different substantially from what it was on Round 1. Did you say that to him? Yes, Your Honor, we said exactly that. In fact, what I was just referencing about how we used Acrylicon's own fee award, if you go back and look at the exhibits to document 563, we traced a time period from when Acrylicon first added its breach of contract claim, this was in an amended complaint, to the time when we made an offer, an offer of settlement, which frankly, we offered 220,000 in fees, which is way more than we think they're entitled to at this point. So there was a specific time period, we proposed a specific fee apportionment that would have been specific to breach of contract, and would have, I guess, unappropriated the amount for misappropriation, which of course, they're not entitled to anymore, because that claim was reversed in Silicon Valley too. If there are no further questions on that, I'd like to go back and touch the injunction issue very briefly, because I think there's a lot of similar overlapping issues. As Judge Marcus pointed out, a permanent injunction is an extreme form of relief, a permanent worldwide injunction, and yet, there's only a single paragraph, a single recitation of what the injunction is in the second revised final judgment, and there's no fact-finding on this, none of the things that goes on there. Did you argue any of that in the district court? We argued against the injunction, I don't think we mentioned it, it's in Rule 65. Did you say, Judge, if you're going to enter a permanent injunction, the law requires you to do this, this, this, and this. Please do it. We did not argue it that way, because we think that the injunction issue is gone. We think that it's been forfeited, it's been waived, and the district court didn't even have jurisdiction to argue the issue. Okay, very well. Thank you so much to both of you.